**SCHOWERS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 11836.

United States Court of Appeals
District of Columbia Circuit.

Argued June 8, 1954.

Decided Sept. 16, 1954.

Mr. Josiah Lyman, Washington, D. C., with whom Mrs. Kathryn M. Schwarz, Washington, D. C., was on the brief, for appellant.

Mr. Harold H. Greene, Asst. U. S. Atty., Silver Spring, Md., with whom Messrs. Leo A. Rover, U. S. Atty., and Lewis A. Carroll, and Paul F. Leonard, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee. Mr. William J. Peck, Asst. U. S. Atty., Washington, D. C., at time record was filed, entered an appearance for appellee.

Before WILBUR K. MILLER, PRETTYMAN and FAHY, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

Jack H. Schowers and Raymond Thomas, jointly indicted for armed robbery, were found guilty by a jury. Schowers appeals on the sole ground that a written confession signed by him had been extorted from him by physical brutality and psychological coercion, and was therefore erroneously received in evidence.

The robbery took place at Greystone Cleaners, 1314 21st Street, N.W., in the District of Columbia, in the early afternoon of Saturday, January 24, 1953. Shortly after 1:00 o'clock two Negro men entered the place. The shorter and darker of the two was carrying an overcoat on his arm. The other, who was taller and lighter in color, was wearing a red plaid shirt and a tan topcoat. The shorter man pointed a pistol, which was partially concealed by the coat on his arm, at Mrs. Mary Pomeroy, who was standing behind the counter, and said, "Lady, this is a stick-up." When Mrs. Pomeroy screamed, the taller bandit fled, but the man with the gun stopped long enough to take $87 from the cash register before he followed his companion. A neighbor, who heard the scream and started toward the store, saw the two men but turned back when he was threatened with the pistol.

Mrs. Pomeroy telephoned the police and at 1:35 p. m. Detectives Roche and Herlihy of the robbery squad arrived at the scene. They took Mrs. Pomeroy in their car to drive about in the vicinity looking for the bandits. In the meantime, Officers Hill and Wolfrey of the Metropolitan Police Department, who were in a cruiser at 25th Street and Pennsylvania Avenue, heard the police broadcast concerning the robbery. It described the robbers as being on foot and said the taller one was wearing a red plaid shirt. They proceeded immediately to the neighborhood where the crime had been committed and saw Schowers and Thomas walk south on 22nd Street across the intersection with M Street and hail a cab. Before they could enter it, the officers arrested them.

When the arrest was made Schowers was wearing a red plaid shirt and an unbuttoned topcoat. A loaded pistol and certain money were taken from Thomas,

who admitted the robbery but said Schowers was not with him. The prisoners were taken back to the Greystone Cleaners to await the return of Mrs. Pomeroy and the officers of the robbery squad. She identified Thomas but could only identify Schowers by the red plaid shirt and tan overcoat, as the second bandit had stood behind Thomas during the holdup.

About 3:00 p. m., or shortly before, Detectives Roche and Herlihy interrogated the prisoners. The following is quoted from Roche's testimony:

"Q. Of your own independent recollection—and in the event you have exhausted your recollection, we will talk about notes, Officer—but from your own recollection at this time tell us, if you can, as best you can, just what Mr. Thomas said to you about this matter. A. Well, Thomas readily admitted the case, and told us. But he told us that he didn't want to involve anybody else; that he was involved and he had the money and he had the gun and he went in.

"So we started questioning Schowers about the case, and he said, 'Well, the woman couldn't identify me because she didn't see me. When the woman screamed, I ran.'

"Q. What time of day was this? A. That was about, oh, a quarter to three or three o'clock in the afternoon.

"Q. That Schowers told you this? A. Yes.

"Q. Your voice dropped at that point and I just wondered if the Court and the jury may have missed it. You say that Schowers said to you, 'When the woman screamed'—

what was that, again? A. 'The woman screamed and I ran. I just went as far as the door, and the woman screamed and I ran.'

"Then he told us the procedure of what he did, how Thomas came to his house that morning; that they went out looking for a place to hold up; how he and Thomas proceeded by bus and streetcar, and then they walked around. And they said, I believe Schowers said to Thomas, 'This is a likely place to hold up.' And they looked it over and there was some people in there and they walked down the street a ways and came back up, and there wasn't anybody in there but the complainant. Then Thomas went in with the gun.

"Q. During all this time, Thomas was right there when Schowers was speaking, and vice versa, Schowers was there when Thomas was speaking? A. Yes; he said that in front of Schowers, and he said, 'He is a so-and-so fool. He has a wife and two or three children.' I don't know which. He said, 'I was going to take all the blame for the whole thing,' and that he definitely is not a holdup man. Thomas said he wouldn't work with Schowers, because Schowers is too scared to go into a place and hold it up."

The officer added, "I asked Schowers if he wanted to reduce it to writing at that time, and he said he didn't think so, he wouldn't because the woman couldn't identify him."

About 10.00 o'clock Saturday evening Schowers asked Officer Roche to take his written confession. It was typed by Officer Herlihy and signed by the appellant in the presence of both detectives.[1]

1. "About 10:30 AM Jan. 24, 1953 Raymond Thomas came by my house at 1015 3 St. NE and we left for 7th & P NW by streetcar and bus to stop by my father in law's barber shop. Before we got there Thomas showed me a gun and I suggested that it might be a good way to get some money. Since everyone knows me around 7th & P NW we decided to catch a bus west on P and got off around 21st & P and then walked south on 21 St. looking for a place to hold up. When we came to the Greystone Cleaners at 21 & Newport I said that it looked like a good place but there were people around so we went past the store to N St. and then went west on N to an alley which came out on Newport St. above the store and then

United States Commissioner Lawrence testified that when Schowers was arraigned before him Monday morning, January 26,

"He admitted his participation. He said, 'I admit participating in the crime, but I don't think they will be able to prove it,' or 'you will be able to prove it,' or somebody 'will be able to prove it,' or words to that effect."

Taking the stand in his own behalf, Schowers said Thomas came to his home at 10:30 a. m. on January 24; that in about thirty minutes they left together; that they went by streetcar to 7th and P Streets, and later went by bus to 21st and P. Streets, where he said they separated. It is of course indisputable that he was with Thomas at 22nd and M Streets—one block north and one block east of Greystone Cleaners—when they were arrested a very few minutes after the crime was committed.

Schowers said the written confession was untrue and that he was forced to sign it. He did not repudiate or deny having made the confession to the officers within two hours after the robbery, nor did he deny making the statement attributed to him by Commissioner Lawrence. Moreover, when the written con-

Thomas went in and I stood by the door and when I heard the woman scream I ran back down the alley toward N St., crossed N St. and ran down another alley which came out by a gas station near 22 & M. By this time Thomas had caught up and

fession was offered in evidence, Schowers' counsel not only did not object but affirmatively stated he had no objection to its introduction. The trial judge did not submit to the jury the question whether the written confession was voluntarily given, but no complaint was made because of that omission.

We have the right, of course, to notice error which was not objected to, when we think it necessary to do so in order to do justice. But here the written confession was merely cumulative in effect. Without it, the evidence of Schowers' guilt was overwhelming. So, even though the trial judge erred in not permitting the jury to determine the issue of voluntariness, we are clear that reversal for that reason is not required.

Affirmed.

FAHY, Circuit Judge.

I concur in affirmance because I do not think the admissibility of the confession is properly before the court for review. If, however, such review were had and as a result the confession were found inadmissible, or other error were found, with respect, for example, to the procedure for determining the question of admissibility, I would not think such error harmless.

when on 22 St. we were hailing a cab when the Officers caught up with us. They then put us in a car and returned to the scene of the hold up where the woman identified Thomas."